

**SIGNED this 27th day of March, 2014.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 10-54273-CAG |
| | § | |
| JIMMY CASTILLO AND | § | |
| DINA YVONNE CUELLAR, | § | |
| | § | CHAPTER 7 |
| Debtors. | § | |

**MEMORANDUM OPINION AND ORDER DENYING CHAPTER 7 TRUSTEE'S
MOTION TO COMPEL THE DEBTORS TO TURN OVER ASSETS OF THE
BANKRUPTCY ESTATE OF DINA YVONNE CUELLAR
TO THE CHAPTER 7 TRUSTEE**

Came on to be considered the above-numbered bankruptcy case, and, in particular, the Chapter 7 Trustee's Motion to Compel the Debtors to Turn Over Assets of the Bankruptcy Estate of Dina Yvonne Cuellar to the Chapter 7 Trustee (ECF No. 63)(the "Motion"), and the Debtors' Response thereto (ECF No. 66). The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. § 1408(1). This matter is referred to this Court under the District's Standing Order of Reference. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (E) in which the Court may enter a final order. *See* ***Stern v. Marshall***, 131 S. Ct. 2594 (2011). The Court finds that this is a contested matter as defined

1

under Fed. R. Bankr. P. 9013. As such, the Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 9014. The Court took this matter under advisement on January 6, 2014, and is of the opinion that Chapter 7 Trustee's (the "Trustee") Motion should be DENIED.

## BACKGROUND

Debtors Jimmy Castillo and Dina Yvonne Cuellar filed Chapter 13 bankruptcy on November 10, 2010 (ECF No. 1). The Court confirmed their Chapter 13 Plan on March 8, 2011 (ECF No. 11). The Debtors converted their case to Chapter 7 on July 31, 2013 (ECF No. 41). Their first meeting of creditors in the Chapter 7 case was concluded on September 3, 2013.

During the pendency of the Debtors' case, Dina Yvonne Cuellar ("Dina Cuellar") inherited, by intestate succession, fractional interests in her father's home located at 3227 West Laurel, San Antonio, Texas. She first inherited a one-third fractional interest in the home when her father, Guadalupe Cuellar, Sr., died on August 31, 2012. She received an additional one-sixth fractional interest in the home when her brother, Guadalupe Cuellar, Jr., died on February 10, 2013. Along with her sister Elizabeth Cuellar, Dina Cuellar obtained both these interests through intestate succession. Neither interest was reported in the Debtors' Chapter 13 case or at the meeting of creditors in their Chapter 7 case. Rather, the Chapter 7 trustee only learned of the inherited interests in the home after the home was listed for sale and upon the Debtors and Elizabeth Cuellar receiving a contract for the purchase of the home on December 2, 2013. (Trustee's Exhibit 10). The Debtors did not disclose the inherited interest in the home and the contract to purchase the home to the Trustee, creditors, or the Court.

There are some additional facts concerning this case. Elizabeth Cuellar also filed her own Chapter 13 case (Case No. 10-53002-RBK) on August 3, 2010 (ECF No. 1). Elizabeth Cuellar's Chapter 13 plan was confirmed on October 13, 2010. (ECF No. 9). Elizabeth Cuellar

converted her case to Chapter 7 on October 4, 2013. (ECF No. 25). Elizabeth Cuellar received her Chapter 7 discharge on January 2, 2014. (ECF No. 32). Like her sister, Elizabeth Cuellar also received fractional interests in the home located at 3227 West Laurel when her father and brother pre-deceased her. Like her sister, Elizabeth Cuellar did not tell her Chapter 7 trustee about her inheritance by intestate succession nor did she disclose it to the Court or her creditors. Finally, there is one other aspect of this case that makes it unique: Elizabeth Cuellar lives at 3233 West Laurel; her father and brother lived at 3227 West Laurel; and her sister, Dina Cuellar, lives at 3231 West Laurel. All three homes are located on the same side of the same street with the inherited property situated between the two sisters who filed bankruptcy.

## PARTIES' CONTENTIONS

The Trustee in Dina Cuellar's case filed this Motion contending that Dina Cuellar had a duty as a debtor to disclose her inherited interest in the home under Fed. R. Bankr. P. 1007(h)[1] and 11 U.S.C. § 541(a)(5) (2012)[2]. The Trustee notes that property acquired after the Chapter 13 petition is filed and that is in the possession of the debtor upon conversion to Chapter 7 would not usually become property of the Chapter 7 estate. That said, the Trustee alleges that, under § 348(f)(2), where a case is converted in bad faith from Chapter 13 to Chapter 7, the property acquired after the filing of the Chapter 13 petition becomes property of the Chapter 7 estate.

Here, the Trustee argues that, when Guadalupe Cuellar, Sr. died and Dina Cuellar received a fractional interest in his home, the fractional interest became property of the estate under § 1306(a)(1). Specifically, the Trustee argues that, under § 1306(a)(1), the fractional interest is property of the estate because it is property that the Debtor acquired after the

---

[1] Unless otherwise noted, all references to "Rules" or "Bankruptcy Rules" are to the Federal Rules of Bankruptcy Procedure.

[2] Unless otherwise noted, all references are to Title 11, U.S.C. *et seq.*

3

commencement of the Chapter 13 case and before the Debtor converted her case to Chapter 7. The Trustee alleges that the Debtors had a duty under Rule 1007(h) to disclose the inheritance in a supplemental schedule because Dina Cuellar acquired an interest in property of the estate during her Chapter 13 case. Given the non-disclosure, the Trustee argues that it was bad faith to not disclose the inheritance, and the fractional interests become property of the estate under § 348(f)(2).

The Trustee contends that Dina Cuellar's failure to disclose the one-sixth fractional interest in the home that she received upon her brother's dead is further evidence of bad faith. Dina Cuellar's non-disclosure in her case is compounded by her sister Elizabeth Cuellar's failure to disclose her own fractional interests in her bankruptcy case. Moreover, Elizabeth Cuellar filed four affidavits of heirship in the Bexar County records, yet neither Dina nor Elizabeth Cuellar disclosed the inheritance in their respective bankruptcies.

The Debtors respond by noting that Dina Cuellar admits she received her interests in 3227 West Laurel but denies that her fractional interests are property of the estate. Moreover, she agrees with the Trustee that generally, under § 348(f)(2), property of the estate does not include property acquired after a Chapter 13 petition is filed and before a case is converted to Chapter 7. Dina Cuellar further agrees that an exception to this statutory provision exists where a debtor acts in bad faith. Nonetheless, the Debtors argue Dina Cuellar did not know that she had acquired an interest by intestate succession because there was no will to probate. Dina Cuellar states that she did not know how the Texas Probate Code operates regarding the disposition of real property upon death. Further, it is uncontroverted that Dina Cuellar lost her father, brother, and a cousin in a six-month period. She claims that, as a result, she was distraught and unaware of her acquiring an interest in 3227 West Laurel. Dina Cuellar also points out that it was her sister, and not herself, that was in the process of selling her father's

home and that the sale process occurred after the conversion to Chapter 7 in Dina Cuellar's case. For these reasons, the Debtors argue that there was no bad faith in their conversion from Chapter 13 to Chapter 7.

Further, the Debtors maintain that, because the fractional interests are not property of the estate, there was no duty to disclose them under Rule 1007(h). Debtors' counsel states that he advised Debtors against the disclosure because it was unnecessary. Finally, the Debtors argue that the inheritance was not received within 180 days of the date of the petition, and, as such, does not constitute property of the estate under § 541(a)(5).

## FINDINGS OF FACT

The Trustee provided a "Chronology of Events" for the Court to consider as indicative of the Debtors' bad faith or intent. Most of the events have been recited herein, but the Court will relate them again for purposes of establishing a full record.

August 3, 2010 – Elizabeth Cuellar files Chapter 13 Case No. 10-53002-RBK

October 13, 2010 – Elizabeth Cuellar's Chapter 13 plan is confirmed

November 1, 2010 – Debtors file Chapter 13 Case No. 10-54273-CAG

March 8, 2011 – Debtors' Chapter 13 plan is confirmed

August 31, 2012 – Guadalupe Cuellar, Sr. dies

February 10, 2013 – Guadalupe Cuellar, Jr. dies

May 30, 2013 – Chapter 13 trustee files Motion to Dismiss in Debtors' Chapter 13 case for plan arrears

July 31, 2013 – Debtors' case is converted to Chapter 7

September 3, 2013 – Debtors' meeting of creditors in Chapter 7 case concluded and filing of No Asset Report

September 13, 2013 – Elizabeth Cuellar files four affidavits of heirship in the Bexar

5

County, Texas Clerk's Office

October 3, 2013 – Elizabeth Cuellar's case converted to Chapter 7

October 31, 2013 – Elizabeth Cuellar's meeting of creditors concluded in Chapter 7 case and filing of No Asset Report

December 2, 2013 – Contract for sale of 3227 West Laurel signed by Elizabeth Cuellar and Dina Cuellar

Dina Cuellar testified at the hearing on the Trustee's Motion. She stated that when her father died she was unaware that she would be eligible through intestate succession to inherit a fractional interest in her father's home. She indicated that she was ill during 2012, and, coupled with the death of her father and brother, she did not think about the potential of her inheriting a fractional interest in her father's home. Additionally, Dina Cuellar explained that she was so disinterested in her father's home she did not even prepare the home for sale until after she learned that her sister was going to market the home for sale.

The Chapter 13 Trustee filed her Motion to Dismiss and Notice for hearing on May 30, 2013, because the Debtors were delinquent $1,297.00 in Chapter 13 plan payments, which was roughly three months of plan arrears (ECF No. 39). Dina Cuellar explained that the reasons for her Chapter 13 case being converted to Chapter 7 in July 2013 were that she had to care for her ill father, pay for his funeral expenses, and also care for her brother before he died. During this time, Jimmy Castillo also had surgery and was unable to work for period of time. As such, given the lack of income and the unanticipated funeral expenses, the Debtors had to convert their case to Chapter 7. Dina Cuellar did acknowledge, however, that she was a beneficiary with her sister of her father's insurance two policies and that the Cuellars used insurance proceeds to pay for her father's funeral expenses. Dina Cuellar also conceded that if her share of the sale proceeds from the home were distributed to unsecured creditors that it would result in an additional $7,500.00

6

being distributed to unsecured creditors.

## CONCLUSIONS OF LAW

Based upon the parties' arguments, the Court must first decide if the inheritances were property of the Chapter 13 estate. The question is whether the definition of property of the estate under § 541(a)(5) excludes interests that were inherited after the first 180 days of the Debtors' Chapter 13 case. There is no dispute that Dina Cuellar inherited her fractional interests over 180 days after her Chapter 13 petition was filed.

*Under § 1306(a), do the fractional interests become property of the estate notwithstanding the language of § 541(a)(5)?*

Section 1306(a)(1) states that:

**(a)** Property of the estate includes, in addition to the property specified in section 541 of this title--
> **(1)** all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

In addition, § 541(a)(5) states:

**(a)** The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

. . .
> **(5)** Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--
>> **(A)** by bequest, devise, or inheritance;
>> **(B)** as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or
>> **(C)** as a beneficiary of a life insurance policy or of a death benefit plan.

The majority of the case law regarding inherited interests received after the first 180 days after a Chapter 13 petition is filed has found that these interests are property of the Chapter 13

7

estate. *See Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013) (§ 1306 broadens the definition of property of the estate for Chapter 13 purposes). The Ninth Circuit BAP followed the reasoning of *Carroll* in *In re Dale*, 505 B.R. 8, 12 (9th Cir. B.A.P. 2014). In *Dale*, the court noted that the Fourth Circuit specifically rejected two statutory construction arguments seeking to limit the definition of estate property:

> The Fourth Circuit explicitly considered and rejected in *Carroll v. Logan* two of the statutory construction arguments made by [the Appellants] in this appeal: 1) that courts "must give effect to every word of a statute," and 2) that "specific language in a statute governs general language." 735 F.3d at 152. While recognizing that "courts should give effect to every word of a statute whenever possible," *id.*, the Fourth Circuit concluded that application of that principle required that inheritances received by chapter 13 debtors more than 180 days after the petition date but before the chapter 13 case was closed, dismissed or converted be included as estate property.
>
> [I]f Section 541's 180–day rule restricts what is included in a Chapter 13 estate, then Section 1306(a), which expands the temporal restriction for Chapter 13 purposes, loses all meaning. By contrast, neither statute is rendered superfluous, and both are given effect, if Section 1306(a)'s extended timing applies to Chapter 13 estates and supplements Section 541 with property acquired before the Chapter 13 case is closed, dismissed, or converted. *Id.*
>
> The Fourth Circuit further concluded that the canon of construction that the specific controls the general did not help the chapter 13 debtor appellants before them. Specifically, they rejected the contention that § 541(a)(5) was a specific provision while § 1306(a) was general. Section 1306(a) is specific to Chapter 13 bankruptcies and defines estates solely for purposes of that reorganization chapter. Section 541, by contrast, is a general provision that provides generic contours for bankruptcy estates.

505 B.R. at 12; *see also In re Ormiston*, 501 B.R. 303, 308 (Bankr. E.D.N.C. 2013) (majority view is that § 1306 includes property of the estate properly acquired after the initial 180 day period of filing of Chapter 13 petition); *contra In re Key*, 465 B.R. 709, 712 (Bankr. S.D. Ga. 2012) (§ 1306 not intended to supersede specific statutory substantive provisions in § 541).

The majority of cases conclude that § 1306(a) was intended to increase, not limit, the scope of the estate to property acquired even after the filing of a Chapter 13 petition. A reading

8

of the statute supports the conclusion that § 1306(a) was intended to increase property of the estate beyond § 541. The Court finds that § 1306(a) is determinative of the issue that the fractional interests were property of the Chapter 13 estate before conversion to Chapter 7.

*Did the Debtors have a duty to disclose the inherited interests under Rule 1007(h)?*

Bankruptcy Rule 1007(h) states in relevant part that:

(h) Interests acquired or arising after petition

If, as provided by § 541(a)(5) of the Code, the debtor acquires or becomes entitled to acquire any interest in property, the debtor shall within 14 days after the information comes to the debtor's knowledge or within such further time the court may allow, file a supplemental schedule in the chapter 7 liquidation case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual debt adjustment case. If any of the property required to be reported under this subdivision is claimed by the debtor as exempt, the debtor shall claim the exemptions in the supplemental schedule. The duty to file a supplemental schedule in accordance with this subdivision continues notwithstanding the closing of the case, except that the schedule need not be filed in a chapter 11, chapter 12, or chapter 13 case with respect to property acquired after entry of the order confirming a chapter 11 plan or discharging the debtor in a chapter 12 or chapter 13 case.

The Debtors note that Rule 1007(h) only references § 541(a)(5), and not § 1306(a). Rule 1007(h) was added to the Bankruptcy Rules in the 1987 amendments to the Rules by making a specific reference to § 541(a)(5). As such, the Debtors argue that Rule 1007(h) does not apply to inherited interests acquired 180 days after the Chapter 13 petition is filed, and, there is no duty to disclose the inheritances under Rule 1007(h). For example, the court held in ***In re Batten***, 351 B.R. 256, 259 (Bankr. S.D. Ga. 2006), that the debtor is under no duty to disclose property acquired post-confirmation unless the property falls within a category under § 541(a)(5). In ***In re Ferretti***, 230 B.R. 883, 886 (Bankr. S.D. Fla. 1999), the court found that the duty to amend schedules in a case converted to Chapter 7 is limited by Rule 1007(h), and, the debtor does not need to amend his or her schedules absent application of § 541(a)(5) because the schedules filed

9

in the Chapter 13 case are deemed filed in the converted case. *See also* ***In re Doetsch***, 2007 WL 2702645, at *4 (Bankr. N.D.N.Y. Sept. 12, 2007) (There is some doubt as to the debtor's requirement to disclose inherited interests obtained after 180 days of the Chapter 13 petition date because the Chapter 13 trustee handbook only references inquiries into inheritances acquired within 180 days of filing.).

Conversely, the court in ***In re Euerle***, 70 B.R. 72, 73 (Bankr. D.N.H. 1987), concluded with little discussion that the debtor had a duty to disclose $300,000.00 inherited after a Chapter 13 plan was confirmed. ***Euerle*** did not involve conversion to Chapter 7. As such, the Court finds that a credible argument can be made that Rule 1007(h) did not require disclosure on the inheritances because Rule 1007(h) is limited to property of the estate defined under § 541(a)(5).

*Notwithstanding a lack of duty under Rule 1007(h), were the Debtors required to disclose the inherited property?*

The Debtors conclude that if Rule 1007(h) did not require disclosure of the inherited fractional interests in the home, then there can be no bad faith under § 348(a)(2). The Court disagrees with this reasoning. The law in this Circuit has consistently held that a debtor has a continuing obligation to disclose post-petition claims, causes of action, and assets. The Fifth Circuit held in ***United States v. Beard***, 913 F.2d 193, 197 (5th Cir. 1990), that the defendant, who was prosecuted for bankruptcy fraud for failing to disclose assets in his bankruptcy schedules, had a "duty to disclose to the court the existence of assets whose immediate status in the bankruptcy is uncertain, even if that asset is ultimately determined to be outside the bankruptcy estate." (citation omitted).

Further, the Fifth Circuit previously held that a Chapter 13 debtor has a continuing duty to disclose even a post-petition cause of action because debtors have an express, affirmative duty

10

to disclose all assets even if there is uncertainty about if those assets are property of the estate. *In re Flugence*, 738 F.3d 126, 129 n.1 (5th Cir. 2013), *withdrawing and superseding opinion on petition for reh'g en banc denied* (*per curiam*) (citing **Browning**, 179 F.3d at 207–08 ("It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims. The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action.")). The Fifth Circuit found the continuing duty to disclose is supported by its case law. *See id.*; **Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)**, 374 F.3d 330, 335 (5th Cir. 2004) ("The duty to disclose is continuous."); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

The Fifth Circuit in **Flugence** cited with approval the bankruptcy court's opinion in **In re Robinson**, 292 B.R. 599, 607 (Bankr. S.D. Ohio 2003), wherein the court held that "[D]ebtors have the absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate. This is because the bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." *Id*. at 130 n.4. **Flugence** also holds that even on the advice of counsel not to disclose an asset, claim, or cause of action that the non-disclosure on the advice of counsel does not exculpate the debtor if there was a motive to conceal. *Id*.

*Was the Debtors' conversion to Chapter 7 in bad faith?*

Section 348(f)(1)(A) and (f)(2) state:

**(f)(1)** Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title--
 **(A)** property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; …

11

**(2)** If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

Notwithstanding the Court's findings and conclusions that the inherited fractional interests were property of the Chapter 13 estate and that there was an ongoing duty to disclose the fractional interest as mandated in the Fifth Circuit, this Court must still evaluate if the facts support a finding of bad faith for the Debtors' conversion to Chapter 7. The Court must determine if the Trustee has met his burden to show that the conversion itself was based on the Debtors' bad faith.

The Debtors made the following allegations in their Response (ECF No. 66) that the Debtors believe rebut any finding of bad faith:

(1) the Debtor acquired her interests in 3227 West Laurel by intestate succession and not by will;

(2) the Debtor was unaware of how the Texas Probate Code affects distribution of property by intestate succession;

(3) the Debtor only learned of her inherited interests in her father's home after her sister placed the home for sale;

(4) on the advice of counsel, the Debtor did not disclose her interest in 3227 West Laurel and her failure to do so should be categorized as "inadvertent"; and

(5) the basis for the Debtors' conversion to Chapter 7 was an inability to make plan payments, and not to conceal receiving fractional interests in 3227 West Laurel.

The Chapter 7 trustee argues that:

(1) the Debtors had a duty to disclose the fractional interests in 3227 West Laurel under the Code and applicable case law;

(2) Elizabeth Cuellar, in her case, acted the same as Dina Cuellar, in her case, by not disclosing the inherited interests and life insurance policies, and also by signing four affidavits of heirship regarding title to 3227 West Laurel;

(3) the Debtors did not disclose the use of life insurance proceeds to pay for the funeral expenses of Dina Cuellar's father; and

(4) the inherited fractional interests in 3227 West Laurel were property of the Chapter 13 estate and should have been disclosed. Further, the Debtors and their counsel did not have the discretion to not disclose the assets due to their belief that the fractional interests were not property of the estate. That was a determination for the Court to make.

The parties argued that application of the Bankruptcy Court for the Eastern District of Texas's decision in *Moser v. Mullican* (*In re Mullican)*, 417 B.R. 389 (Bankr. E.D. Tex. 2008), *aff'd*, 417 B.R. 408 (E.D. Tex. 2009) is dispositive of the issue of bad faith. This Court agrees with the analysis that the *Mullican* bankruptcy court used and adopts it for purposes of reaching its decision in application of § 348(f)(2). Additionally, although *Mullican* was a case involving the denial of the debtors' discharge under § 727, the *Mullican* court did reach the merits of a bad faith conversion under § 348(f)(2). The *Mullican* fact pattern is similar to this case in that the debtors inherited an IRA with a balance of $162,000, checking account monies, a home, two vehicles, and nominal life insurance proceeds while in a Chapter 13 case. *Mullican*, 417 B.R. at 395. The inherited home was placed for sale while the Chapter 13 case was pending and the debtors used money from the IRA to purchase personal items, take a vacation, and pay bills. *Id*. These actions all occurred during the Chapter 13 case. Also during the Chapter 13 case, Mr. Mullican lost his job, and, the debtors elected to convert their case to Chapter 7. The debtors did disclose the inherited IRA and claimed it as exempt but also misrepresented the amount of money they withdrew from the IRA and the amount of proceeds from the sale of the home. *Id*. at

396. Further, the debtors concealed from the Chapter 7 Trustee the monies that they spent from the inherited assets during their case. *Id*.

As this Court found herein, the *Mullican* court also concluded that the inheritance was property of the estate under § 1306(a). *Id*. at 399. As such, because the inheritance was not properly disclosed, the *Mullican* trustee alleged that it was bad faith for the debtors to convert their case to Chapter 7 after not disclosing the inheritance in the Chapter 13 case. In analyzing bad faith under § 348(f)(2), the *Mullican* court stated:

> Bad faith is not defined in the Bankruptcy Code nor has the term as used in § 348(f)(2) been interpreted by any court in this jurisdiction. In *In re Siegfried*, 219 B.R. at 585, and *Warren v. Peterson*, 298 B.R. 322, 327 (N.D.Ill.2003), the courts defined bad faith by referring to the term ''good faith'' in 11 U.S.C. § 1325(a)(3). The Fifth Circuit long-ago adopted a ''totality of the circumstances'' test for deciding whether a Chapter 13 plan has been filed in good faith and satisfies § 1325(a)(3).

*Id*. at 401. (citations omitted).

Under the totality of the circumstances approach, the *Mullican* court found the following circumstances should be considered in evaluating good faith:

> In determining whether a Chapter 13 case has been converted in bad faith, the Court considers whether the conversion was motivated by an inability to make required payments to the Chapter 13 trustee. The Court also considers whether the debtors have been forthcoming regarding the existence of any post-petition change in circumstances that might affect their ability to make payments to their creditors and whether the conversion would create a windfall for the debtors (other than a decrease in liabilities) to which they would not have been entitled but for the existence of their pending Chapter 13 case.

*Id*. at 402.

Under this rubric, the *Mullican* court found the debtors to have converted their case in bad faith because the debtors were current on their Chapter 13 plan payments; the inheritance would have paid unsecured creditors in full; the debtors paid family member debts and not other unsecured creditors; the debtors had spent some of the inheritance; and the debtors had made

14

false representations about the use of some the inheritance proceeds. *Mullican*, 417 B.R. at 402-03.

The difficulty in applying the totality of circumstances test here is that there is insufficient, or no evidence, on some of the circumstances. The Court does not know the date 3227 West Laurel was placed on the market for sale; the extent of Dina Cuellar's knowledge about the fractional interests at the time of conversion of her case to Chapter 7; or at the time of Chapter 7 meeting of creditors whether Dina Cuellar was instructed not to disclose her inherited fractional interests. Dina Cuellar did acknowledge that she was the beneficiary of two life insurance policies along with her sister, but there was no testimony as to the amount of the life insurance proceeds, or if any money was left over after paying funeral costs.

The Court does know that conversion to Chapter 7 was preceded by job loss and illness in the Debtors' Chapter 13 case, which appears to be the factors that caused the case to be converted. In fact, the Trustee's Motion to Dismiss the Debtors' case was based on plan arrears and the Court allowed the Debtors time to convert their case to Chapter 7 rather than dismissing it. The Debtors did tell their counsel about the inheritances, and, on counsel's advice did not disclose it. The Debtors' Amended Summary of Schedules (ECF No. 48), filed on October 21, 2013, indicate secured debt of $66,727.55, unsecured priority debt of $3,200.00, and unsecured debt of $37,765.88. The contract for sale of the home at 3227 West Laurel indicates that Dina and Elizabeth Cuellar would receive $15,000.00 at closing (and $3,000.00 to be paid in two installments before August 1, 2014) with the balance of the sale price - $41,000.00 to be paid over time. (Trustee's Exhibit 10). The Chapter 13 Standing Trustee's Final Report and Account (ECF No. 48), indicates total disbursements of $10,695.00 with no distributions to the general unsecured claimants holding claims of $20,184.57. Dina Cuellar's share of the initial down

15

payment - $15,000.00, could have resulted in a distribution of $7,500.00 to unsecured creditors in her Chapter 7 case, but not a satisfaction of all unsecured claims.

It is also uncontroverted that the house was situated between Elizabeth and Dina Cuellar's homes. It is also difficult to believe that Dina Cuellar did not have some interest, if not questions, about the sale of 3227 West Laurel when it was listed for sale. That said, it is also understandable that the Debtors' attention regarding the home was diverted by the deaths of three family members and the Debtors' own health issues. The Court finds Dina Cuellar's testimony credible; and, as such, does not believe that the Debtors' conversion from Chapter 13 to Chapter 7 was in bad faith. Rather, the basis for conversion to Chapter 7 was due to failure to make plan payments. The deaths of family members did occur before conversion to Chapter 7; however, the operative facts regarding the intestate succession occurred after conversion. The Court would point out, however, that is does not condone the non-disclosure and Debtors' counsel should have made the disclosures to the Court, trustee, and creditors. Had there been full disclosure, a great deal of supposition about the Debtors' conduct would have been avoided. That said, the Court finds that the Trustee has not met his burden in establishing that the Debtors' conversion to Chapter 7 was made in bad faith.

IT IS THEREFORE ORDERED that the Trustee's Motion is DENIED.

# # #